UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Utility Workers Union of America,
AFL-CIO Local 223,

                                                      Case No.

        Plaintiff,

vs.

The DTE Electric Company, DTE Gas
Company and DTE Energy Corporate
Services, LLC,

        Defendants.

_____/

## VERIFIED COMPLAINT FOR PRELIMINARY INJUNCTIVE RELIEF

NOW COMES Plaintiff Utility Workers Union of America, AFL-CIO Local 223,

by and through its counsel, L. Rodger Webb, P.C., and for its Complaint against

Defendants DTE Electric Company, DTE Gas Company and DTE Energy Corporate

Services, LLC, states as follows:

      1.     This action arises under, and jurisdiction is conferred on this Court

pursuant to, Section 301 of the Labor Management Relations Act, 1947 (29 U.S.C. §185),

hereinafter referred to as the Act, as well as the Court's traditional jurisdiction in equity.

      2.     Plaintiff Utility Workers Union of America, AFL-CIO Local 223,

hereinafter referred to as "Local 223" or "the Union," is the duly certified exclusive

bargaining representative of several collective bargaining units of workers employed by

defendants, among them the Gas Division, which encompasses defendants' employees in

the Gas Distribution and Field Service, Transmission and Storage Operations, and credit

and collection departments, and as such is a labor organization representing employees in

an industry affecting commerce, as defined in §§ 501(1) and (3), and 2(5), of the Act (29 U.S.C. §§132(1) and (3), and 152(5)), and within the meaning of §301 thereof (29 U.S.C. §185).

3.      Plaintiff Local 223 maintains its principal office in the City of Dearborn, State of Michigan, within the territorial jurisdiction of this Court.

4.      Defendants DTE Electric Company, DTE Gas Company and DTE Energy Corporate Services, LLC, are Michigan Corporations, under corporate ID #s 285655, 162309 and D1016J respectively (hereinafter collectively "DTE" or "the Company"), which at all times pertinent hereto have been and are engaged in substantial and not isolated business activities in the State of Michigan, and operate multiple operations and facilities in Southeast Michigan, within the territorial jurisdiction of this Court.

Local 223's Gas Division Company employees are engaged in the distribution of gas to businesses and homes, maintenance of the facilities associated with such enterprise, and in the extension of credit to and collection of payments by those customers.

As such the Company is an employer affecting commerce, as defined in §§501(1) and (3) and (2) of the Act (29 U.S.C. §§142(1) and (3) and 152(2)), and within the meaning of §301 thereof (29 U.S.C. §185).

5.      At all times material hereto, DTE and Local 223 had entered into collective bargaining agreements which contained a grievance procedure providing for the presentation, adjustment and settlement of grievances, including submission to final and binding arbitration. Specifically, the parties' present collective bargaining agreement

2

has a term from March 23, 2013 to June 5, 2017 for the Union's Trades and OPT

bargaining units, and to October 9, 2017 for the Gas bargaining unit.

The parties' negotiated grievance procedure, Articles 4 and 5, attached hereto as

Exh A, provides in pertinent part as follows:

Article 4 – Grievance Procedure

Section 4.3. Arbitration of Grievances. If the Union is not satisfied with the decision of Management at Step 3 of any grievance which concerns the meaning or application of the terms of this Agreement, then the Union may submit such grievance to arbitration in accordance with Article 5 within sixty (60) calendar days after the mailing by the Company to the Local Union office of the decision of the President or the President's Delegate at Step 3. Any such grievance not so submitted to arbitration within sixty (60) calendar days will be considered to no longer exist. Grievances which do not concern the meaning or application of the terms of this Agreement may not be submitted to arbitration, and will be considered to no longer exist. The question of whether a grievance is subject to arbitration may be arbitrated.

Article 5 – Arbitration

Section 5.1. Submission to Arbitration. Any grievance which may be submitted to arbitration under the provisions of either Section 4.3 or of Article 6 may be so submitted within the time limits therein provided by requesting the American Arbitration Association in writing to select an arbitrator in accordance with its voluntary labor arbitration rules and sending a copy of such request by certified mail or email within such time limits, addressed to the Company to the attention of its Director of Human Relations at One Energy Plaza, Detroit, Michigan 48226.

***

Section 5.3. Hearing and Decision. All proceedings before the arbitrator shall be conducted in accordance with the voluntary labor arbitration rules of the American Arbitration Association. The decision of the arbitrator upon any question permitted by this Agreement shall be final and binding upon both parties.

6.      On August 8, 2006, during the term of their 2004-2007 collective

bargaining agreement, pursuant to the filing and prosecution of six grievances under the

parties' collectively bargained grievance procedure, including three by the Gas Division,

GD Grievances 2527, 2530 and 2531, regarding the Company's proposal to contract out

3

work done in its several customer business offices, filed in March 2006, and the filing of

a related unfair labor practice charge, NLRB Case No. 7-CA-49422, in April, 2006 the

parties entered into a Settlement Agreement dated August 8, 2006 which resolved all of

pending grievances, including those filed by the Gas bargaining unit, and the Union's

unfair labor practice charge.

      7.      The parties' Settlement Agreement, attached hereto as Exh B, provides in

pertinent part as follows:

### Settlement Agreement August 8, 2006

1.    **Division Business Unit Discussions** (Fossil Generation, Distribution
Operation, Corporate Services/Support, Gas and Customer Service). The Parties
agree that the Company and each affected Division will begin discussions by
August 14, 2008 to finalize MOU discussions by September 13. 2006. This will
satisfy the 30 day requirement under section 7.11a of the CBA. If no agreement is
reached the parties reserve all other rights under Section 7.11. Any such
agreement regarding any matter addressed in the above mentioned MOU(s) will
not result in the contracting or outsourcing of jobs or work. If the Company finds
it necessary to reduce in classification as a result of the above mentioned MOU(s),
the Company will not backfill or replace those vacated positions by outsourcing
or contracting. It is the intent of the parties that neither the purpose nor the effects
of this agreement will modify, diminish, supplement or in any way change the
rights of either party provided by the Collective Bargaining Agreement which is
in effect until June 2007, which the parties expressly reserve, except as modified
herein.

                         \*\*\*

2.    **Credit & Collection Offices**: The Company will maintain a minimum of
three customer offices located in the Detroit Metropolitan area.

3.    **Grand Rapids**: If the Company closes the Grand Rapids (GR) Credit
Center, the work and jobs will be transferred to the GR Call Center. The CR Call
Center will not be closed.

4.    **Customer Service**: The Company withdraws its request to offer VSIP's or
to require involuntary PEP layoffs within the Customer Care and Phone
Collections Organizations, including Grand Rapids. The Company also agrees to
pursue process, productivity and absence improvement initiatives with Local 223
as previously discussed.

5.      This agreement resolves and settles LU Grievances 84, 86, 87, 88, GD2527, GD2530, G02531 and NLRB Case No. 7CA-49422. The Union withdraws the ULP charge regarding the PEP information request which is the subject of the Amended/Consolidated complaint in NLRB case 7-CA-49422 and all PEP information requests.

                                        ***

8.      This settlement agreement is part of the current collective bargaining agreement.

9.      The parties will work out an agreement regarding the information the Union reasonably needs to monitor compliance with this Settlement Agreement.

8.      The August 8, 2006 Settlement Agreement was carried over without change through the terms of the parties' successor collective bargaining agreements, viz., their 2007-2010, 2010-2013 and 2013-2017 collective bargaining agreements.

9.      In November 2014 the Company commenced a "rapid experiment" at the West 7 Mile customer business office in Detroit, one of the protected customer business offices subject to the parties' August 8, 2006 Settlement Agreement. Local 223 filed Gas Grievance 3290 on November 20, 2014, challenging the Company's initiative, asserting that it violated the parties' agreement to maintain of a minimum of three customer offices in the Detroit Metropolitan area.

The Union also filed an unfair labor practice charge, NLRB Case No. 07-CA-142356, asserting that the Company's unilateral action violated the NLRA. In the event, on February 27, 2015, the NLRB Region 7 Regional Director deferred the Union's charge to arbitration.

10.     On March 9, 2015, in the pendency of its Grievance # 3290, Local 223 filed two essentially identical additional grievances, #s 3317 and 3318, challenging the

Company's proposed closure of business offices, again asserting that same violated the parties' August 8, 2006 Settlement Agreement.

11.     On March 18, 2015, the Union's three pending grievances notwithstanding, the Company by its Human Resources Director Renee Moran officially notified Local 223 President Michael Smith in writing that it

> has decided to close the Customer Office and Payment Center at the following locations:
>
> • Eastern Market Customer Office
>
> • Mexican Town Payment Center

See attached Exh C.

12.     On April 16, 2015, Tom Banks, the Gas Division bargaining unit chair, sent Ms. Moran a letter referencing her March 18 letter, the Union's pending grievances 3290 and 3318, and the parties' August 8, 2006 Settlement Agreement. Banks requested the Company's cooperation to expedite processing these grievances through the parties' contractual grievance procedure so as to ensure that the arbitration decision regarding same would not be "fundamentally compromised" by the closure of the subject business offices prior to its issuance. See attached Exh D.

13.     On April 29, 2015, the Union filed an additional grievance, Gas #3330, respecting issues associated with removal of bargaining unit work and changed processes at the West Seven Mile business office, and the Company's "intent to violate or disregard the MOU dated August 8, 2006…"

14.     On May 4, 2015 Local 223 filed an unfair labor practice charge, NLRB Case No. 07-CA-151511 reciting some of the facts stated above, charging that the

Company's business office determination "constitutes repudiation of the parties' negotiated SA, the right premises of the parties' contractual grievance procedure, and the Board's jurisdiction to resolve the Union's recourse to its rights under the Act," and requesting the Board to seek §10(j) injunctive relief under the NLRA, 29 U.S.C. §160(j). Exh E.

15. In the event, based on consultation between the parties' principals, the Union withdrew its pending grievances and its unfair labor practice charge on May 20, 2015, without prejudice, "to permit them to work through the issues," on condition that the Company would not object on timeliness grounds to the refiling of same.

16. In the interim, the parties have not been able to effect a resolution of the issues relating to their August 8, 2006 Settlement Agreement.

17. On October 30, 2015, in light of that fact, and on information from West Seven Mile Local 223-represented employees that the Company was continuing to take action preparatory to closure of that business office, Gas bargaining unit chair Banks wrote the Company referencing the fact that, on information and belief, it had "given notice of office closures to the Union, employees, and customers," and requesting that it cease and desist from any further activity in that regard pending an agreement between the parties. Exh F.

18. On November 9, 2015, Union counsel wrote the Company Human Resources Director, copied to Company Labor Counsel Ben Frimpong, requesting the Company

> to put over closure of the 7 Mile office until the Union's grievance under the contractual grievance procedure has been arbitrated. A fair estimate on the length of time required for that purpose is probably an additional 90 days, assuming the

parties file post-hearing briefs, as is their custom. Local 223 will be happy to expedite arbitration of its grievance, as indicated.

Please let Mike Smith, Local 223 President, know, in writing, cc'd to Thomas Banks and me, whether the Company will agree to the requested extension of time. Failing such an agreement, the Union will be obliged to seek injunctive relief in federal court to preserve its rights to prosecute its grievance under the parties' collective bargaining agreement. Exh G.

19.     After service of that letter, further consultation between the parties' principals have been unavailing, and the Company has not agreed to cease and desist undertaking any further initiatives in the pendency of the prosecution of the Union's subject grievances. Nor has it agreed to expeditious consideration of Gas Unit Grievances #s 3290, 3317, 3318, 3330 and 3372.

Indeed, Local 223 Gas bargaining unit employees have advised the undersigned that the Company's initiatives to close the West Seven Mile office are actively continuing, and that it is rumored that the Company has consulted a real estate agent with a view to sell the building and property housing that business office.

20.     In these premises, the Union by its own device is without capability to forestall further Company initiatives to close its Detroit area business offices, including the West 7 Mile office. In these circumstances, the Court has the authority and obligation to forestall the irreparable injury the Union would incur were an extant business office to be closed in the pendency of the prosecution of the Union's grievances concerning the parties' August 8, 2006 Settlement Agreement, which requires that they remain open. It is plain that it is uncertain when an arbitration can be convened, especially given the Company's failure and refusal to participate in an expeditious processing of the Union's grievances, and it is likewise plain that a labor arbitrator could not restore the status quo ante after a closure.

8

As is affirmatively established in the Union's motion for a temporary restraining order and preliminary injunction, filed herewith, Local 223 can establish the requisite elements for preliminary injunctive relief.

WHEREFORE, UWUA Local 223 prays the Court

(a) to enter its temporary restraining order, enjoining the Company from taking any further action to close any Detroit area business office, specifically including the West Seven Mile office;

(b) to convene a speedy hearing on the Union's motion for a preliminary injunction, and upon hearing same issue an injunction under the seal of the Court affirmatively enjoining the defendants from taking any initiative whatever to change the status quo respecting their Detroit area customer service business offices unless and until an arbitrator holds such action to be permissible under the parties' August 8, 2006 Settlement Agreement; and

(c) grant the plaintiff Union such other and further relief as is indicated in the premises, including its attorney fees and costs.

Respectfully Submitted,

By: _____

L. Rodger Webb (P33356)
Counsel for Local 223
17000 West Ten Mile Road
Goodman Acker Bldg., Ste. 150
Southfield, MI 48075
Tel: (248) 395 9750
Fax: (248) 395 9760

Dated: December 20, 2015

9

I, Tom Banks, being first duly sworn, depose and say as follows:

That I have personal knowledge of the facts stated in this verified complaint, and that same are true to the best of my knowledge, information and belief, and if sworn as a witness I could competently testify thereto.

Tom Banks
Local 223 Gas Division Unit Chair

Subscribed and sworn to before me
on this 20ᵗʰ day of Dec    2015.

Notary Public
My commission expires:

MARIA C. BARBER
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Sep 30, 2016
ACTING IN COUNTY OF OAKLAND

# EXHIBIT A

just cause; subject, however, to the employee's right to bring a grievance if any provision of this Agreement is violated by the exercise of such Management functions.

(For the Gas Division) Company's Responsibilities — The Management of the Company's operations and the direction of the working force remain the sole and exclusive rights and responsibilities of the Company: including, for example, the authority to hire, promote, suspend and discipline employees; to discharge employees for cause and to discharge probationers as outlined under Gas addendum Article 7.27 (1); to adjust the working force; to determine the extent and schedule of its operations; and to introduce new or improved methods and processes or facilities. The Company agrees that it will notify the Union, for information purposes only, of changes in departmental operations, methods, processes or facilities which permanently increase or decrease the working force or which create the need for skills not covered by the then present classifications, and it will discuss with the Union modifications in classification to include the needed skills. In exercising its Management responsibilities, the Company will comply with the terms and conditions of this Agreement and will not discriminate against any member of the Union.

## Article 4
## GRIEVANCE PROCEDURE

Section 4.1. *Union and Company Representatives.* The Union will furnish the Company with the names of its duly appointed or elected representatives and their alternates, and members of its Grievance Committee in each bargaining unit (and such changes as may occur from time to time in such personnel), within five (5) days of their appointment or election, so that the Company may at all times be advised as to the authority of the individual Union representatives with whom it may be dealing. Likewise, the Director of Human Relations will furnish the Union the names and/or titles of the President's Delegate by Business Unit and Company officials designated to settle or decide grievances at Steps 1, 2 and 3 as set forth below.

Section 4.2. *Grievances. a. (Step 1) Discussion with Immediate Supervisor.* Should any disagreement arise between any employee or employees covered by this Agreement and the Company, it shall be deemed a grievance. It shall be discussed by the employee or employees and his/her or their immediate supervisor, either personally, or with or through his/her or their Union representative. If the grievance cannot be settled by discussion it will be reduced to writing promptly, and in a clear manner.  The grievance will be immediately assigned a grievance number. If the written grievance is not so submitted within twenty (20) days (exclusive of Saturdays, Sundays, and holidays) of the action of the Company causing the disagreement, it will be considered to no longer exist. (If the disagreement involves the issuance of an Oral Reminder or a Written Reminder, the discussion will also include at least the second line supervisor.) If not resolved at this discussion stage, these disciplinary issues may go directly to Step 3. If a grievance involves allegations of harassment or discrimination it may proceed directly to Step 3. No grievance that has been discussed with or through a Union representative will be adjusted unless a Union representative is present or has been offered the opportunity to be present. The immediate supervisor will have ten (10) days exclusive of Saturdays, Sundays and holidays from the date the grievance is first submitted to provide a written answer to the grievant and/or Union representative. If such an answer is not given within the required ten (10) days, the grievance may be appealed to Step 2 without a written answer from the immediate supervisor. It is understood that all settlements and/or answers at this discussion level are without prejudice or

7

precedent to the Company or the Union and either party may take an entirely different position if the grievance is appealed to Step 2. It is further understood that no employee will leave work for the purpose of discussing a grievance without first obtaining permission from his/her supervisor and being properly relieved. The Company, except as otherwise agreed, will pay not more than one aggrieved employee and one Union representative for time necessarily lost from regular working hours while discussing such grievance with the supervisor.

   b. Step 2. Interest Based Bargaining Meeting (IBB) If the grievance is not settled at Step 1, the Union will have (20) days (exclusive of Saturdays, Sundays, and holidays) to appeal the grievance to Step 2. If the Union does not appeal within (20) days (exclusive of Saturdays, Sundays, and holidays) the grievance, will be considered to no longer exist. In addition to the times mutually agreeable by the parties IBB meetings will be scheduled every Thursday.

   The Company official so designated to whom the Step 2 grievance is presented, or someone delegated by the Company official with authority to settle or decide the grievance shall, unless otherwise agreed to by the Union, shall convene a Step 2 meeting of the parties within twenty (20) days (exclusive of Saturdays, Sundays and holidays) of receipt of the written grievance. Using the Interest Based Bargaining (IBB) process, the parties will make a good faith effort to resolve the grievance at this Step 2 meeting. Labor Relations may facilitate these Step 2 discussions and will record the resolution reached by the parties.

   It is understood that, unless otherwise agreed to in writing, all settlements and/or answers at Step 2 are without prejudice or precedent to the Company or the Union and either party may take an entirely different position if the grievance is heard at Step 3.

   c. Step 3. President's Delegate Hearing. If the resolution is not reached at Step 2, the Secretary or the President of the Local Union may, within twenty (20) days (exclusive of Saturdays, Sundays, and holidays) after the date of the IBB session submit the grievance in writing to the President's Delegate with full power and authority to settle or decide the grievance. If the grievance is not so submitted to the President's Delegate within such twenty (20) days, it will be considered to no longer exist. A Step 3 hearing will be scheduled at the earliest mutually agreeable time. Unless otherwise agreed, such a Step 3 hearing will take place within thirty (30) calendar days of the Union's appeal to Step 3. The President's Delegate will have five (5) days (exclusive of Saturdays, Sundays, and holidays) from the end of the last Step 3 meeting to mail to the Local Union office and the Bargaining Unit Chairperson, his/her decision in writing, unless the time is waived or extended by the Union. Provided, however, that if a stenographic transcript is made of the Step 3 meeting or meetings, the last meeting will be considered to have been held on the day such transcript is placed in the hands of the President's Delegate.

   Section 4.3. *Arbitration of Grievances.* If the Union is not satisfied with the decision of Management at Step 3 of any grievance which concerns the meaning or application of the terms of this Agreement, then the Union may submit such grievance to arbitration in accordance with Article 5 within sixty (60) calendar days after the mailing by the Company to the Local Union office of the decision of the President or the President's Delegate at Step 3. Any such grievance not so submitted to arbitration within sixty (60) calendar days will be considered to no longer exist. Grievances which do not concern the meaning or application of the terms of this

8

Agreement may not be submitted to arbitration, and will be considered to no longer exist. The question of whether a grievance is subject to arbitration may be arbitrated.

Section 4.4. *Persons Present.* Either of the parties may have present at the meetings provided for in the foregoing steps, any person or persons they may consider necessary to the proper consideration and settlement of the grievance. It is understood that, except as otherwise specifically agreed to in writing by the Company, not more than three (3) employees of the Union's choosing shall be paid by the Company for the time lost from their regular working hours while attending, Step 2 and Step 3 hearings and for one (1) employee while attending arbitration.

Section 4.5. *Step 3 Digital audio recording/Stenographic Transcription.* The Company will make an audio recording of each meeting held at Step 3, utilizing a digital audio recording device, and shall provide, at its expense, stenographic transcripts of such meetings in all cases (i) involving a Decision Making Leave (DML) or discharge, (ii) where the Union, by its President, makes a written request to the Director of Human Relations, not to exceed twelve (12) in any calendar year, and (iii) where a case is submitted to arbitration under either Section 4.3 or Article 6 herein. As it pertains to (i), a stenographer shall be present at the Step 3 meeting and prepare a contemporaneous transcription. With respect to (ii) and (iii), transcriptions shall be made from the Step 3 meeting audio recording. The Company shall furnish transcripts to the Union within 30 days, unless otherwise agreed, of either the Step 3 meeting, the Union's petition for arbitration, or upon the Union's request, as applicable in (ii) above. When there is a request by the President of the Union for said transcripts, such request must be made within fifteen (15) days (exclusive of Saturdays, Sunday and holidays) of the date of President's Delegates Step 3 decision. In these instances, the sixty (60) calendar days for appeal for arbitration shall commence with the mailing by the Company of the transcript. In all other cases, the Company shall provide the Union a copy of the audio recording within 5 days of the Step 3 meeting.

## Article 5
## ARBITRATION

Section 5.1. *Submission to Arbitration.* Any grievance which may be submitted to arbitration under the provisions of either Section 4.3 or of Article 6 may be so submitted within the time limits therein provided by requesting the American Arbitration Association in writing to select an arbitrator in accordance with its voluntary labor arbitration rules and sending a copy of such request by certified mail or email within such time limits, addressed to the Company to the attention of its Director of Human Relations at One Energy Plaza, Detroit, Michigan 48226.

Section 5.2. *Appointment of Representatives.* At the start of the arbitration hearing, each party shall appoint a representative who will be available to meet with the arbitrator after the hearing. Such post arbitration meetings, if any, shall be called at the discretion of the arbitrator and both the Union and Management representative will be present.

Section 5.3. *Hearing and Decision.* All proceedings before the arbitrator shall be conducted in accordance with the voluntary labor arbitration rules of the American Arbitration Association. The decision of the arbitrator upon any question permitted by this Agreement shall be final and binding upon both parties.

Section 5.4. *Power of an Arbitrator.* No arbitrator shall have the power to change any of the

9

provisions of this Agreement.

Section 5.5. *Expenses of Arbitration*. The fees and expenses of the arbitrator, the stenographic record, and similar incidental arbitration expenses shall be shared equally by the parties hereto.

## Article 6
## GRIEVANCES IN DISCHARGE, SUSPENSION, DECISION MAKING LEAVE, AND DEMOTION CASES

Unless otherwise agreed between the Company and the Union, prior to the discharge, suspension, decision making leave (DML), or demotion for cause of an employee, the Company will conduct a fact finding meeting with the Chairperson of the bargaining unit or, Acting Chairperson, or the Chairperson's designee. (See also Section 8.31 regarding the Supervisor's obligation to provide Union representation under other circumstances involving Positive Discipline.) Unless otherwise agreed between the Company and the Union, the Company will prepare and submit to the Union minutes of the fact finding meeting. Unless otherwise agreed between the Company and the Union, if an employee is discharged, suspended, given a DML, or demoted for cause, the Union shall be notified of such action promptly in writing by the Company. Notice will be addressed to the Local Union President and a copy mailed to the Chairperson of the bargaining unit in which the employee was working, or in the Chairperson's absence the Vice Chairperson or Chief Steward. If the employee is not probationary, the employee or the Union may, within twenty (20) days (exclusive of Saturdays, Sundays, and holidays) of notice to the Union, file a written grievance directly with the President of the Company to protest such action without taking the preliminary steps of the grievance procedure set forth in Section 2 of Article 4. It is recognized that such a grievance should be heard at the earliest possible time and take precedence over grievances of a different nature. Therefore, such employee shall have the right to a prompt hearing on such charges before the President of the Company or the President's Delegate, with full power and authority to sustain or alter the severity of the discharge, suspension, DML, or demotion, or to otherwise settle the grievance. The President of the Company or the President's Delegate shall report his/her decision in writing, mailed or delivered to the Local Union office within five (5) calendar days after the conclusion of such hearing. However, if a stenographic transcript is made of the hearing, the conclusion of the hearing will be considered to be the day such transcript is placed in the hands of the President of the Company or the President's Delegate. If the Union is not satisfied with the decision of the President or the President's Delegate, the Union may submit such grievance to arbitration in accordance with Article 5 hereof within sixty (60) calendar days after the date of mailing by the Company to the Local Union office of the decision on such grievance. If not so submitted within such sixty (60) calendar days, the grievance shall be considered to no longer exist. If so submitted to arbitration within sixty (60) calendar days, the power of the arbitrator shall be limited to either upholding the disciplinary action as stated in the decision of the President or the President's Delegate or vacating such disciplinary action. If the arbitrator vacates a discharge, DML, suspension, or demotion, the arbitrator shall order the employee returned to his/her former job with full seniority and compensation for all time and wages lost. The discharge, suspension, DML, or demotion of a probationary employee shall not be the subject of a grievance or arbitration.

(Gas Division Only) Just Cause for Discharge – Without excluding other causes for discharge, the following shall constitute just cause from which there shall be no appeal except to determine

# EXHIBIT B

### Settlement Agreement August 8, 2006

1.  **Division/ Business Unit Discussions** (Fossil Generation, Distribution Operation, Corporate Services/Support, Gas and Customer Service): The Parties agree that the Company and each affected Division will begin discussions by August 14, 2006 to finalize MOU discussions by September 13, 2006. This will satisfy the 30 day requirement under section 7.11a of the CBA. If no agreement is reached the parties reserve all other rights under Section 7.11. Any such agreement regarding any matter addressed in the above mentioned MOU(s) will not result in the contracting or outsourcing of jobs or work. If the Company finds it necessary to reduce in classification as a result of the above mentioned MOU(s), the Company will not backfill or replace those vacated positions by outsourcing or contracting. It is the intent of the parties that neither the purpose nor the effects of this agreement will modify, diminish, supplement or in any way change the rights of either party provided by the Collective Bargaining Agreement which is in effect until June 2007, which the parties expressly reserve, except as modified herein.

    If a VSIP program is agreed to and implemented for any classification, the Company will not backfill or replace the positions vacated by this VSIP program via contracting or outsourcing (intentionally or unintentionally) and if it is determined by management that the VSIP created vacancies must be backfilled, the Company will hire Local 223 Bargaining Unit employees.

2.  **Credit & Collection Offices**: The Company will maintain a minimum of three customer offices located in the Detroit Metropolitan area.

3.  **Grand Rapids**: If the Company closes the Grand Rapids (GR) Credit Center, the work and jobs will be transferred to the GR Call Center. The GR Call Center will not be closed.

4.  **Customer Service**: The Company withdraws its request to offer VSIP's or to require involuntary PEP layoffs within the Customer Care and Phone Collections Organizations, including Grand Rapids. The Company also agrees to pursue process, productivity and absence improvement initiatives with Local 223 as previously discussed.

5.  This agreement resolves and settles LU Grievances 84, 86, 87, 88, GD2527, GD2530, GD2531 and NLRB Case No. 7-CA-49422. The Union withdraws the ULP charge regarding the PEP information request which is the subject of the Amended/Consolidated complaint in NLRB case 7-CA-49422 and all PEP information requests.

6.  It is understood that the Company will honor its commitments outlined in the June 10, 2004 MOU no later than June 4, 2007. The remaining 2004 negotiated hiring commitments will also be completed by June 4, 2007 with a specific hiring plan presented no later than September 30, 2006.

7.  The Union agrees not to take any position adverse to the Company in currently pending DTE Energy related MPSC proceedings.

8.  This settlement agreement is part of the current collective bargaining agreement.

9.  The parties will work out an agreement regarding the information the Union reasonably needs to monitor compliance with this Settlement Agreement.

For the Union:

James Harrison Local 223
UWUA, AFL-CIO President,

Dated: 8-8-06

For the Company:

Larry E. Steward
Vice President, Human Resources

Dated: 8-8-06

# EXHIBIT C



**DTE Energy**

March 18, 2015

Mr. Michael Smith, President
Local 223, UWUA, AFL-CIO
15160 North Commerce Drive
Dearborn, MI 48120

Subject:    Notification Customer Office and Payment Center Closings

Dear Mr. Smith,

For good business reasons, the Company has decided to close the Customer Office and Payment Center
at the following locations:

- Eastern Market Customer Office
- Mexican Town Payment Center

In accordance with Article 7.11 of the 2013-2017 Local 223, UWUA Agreement, a Management
Committee from Revenue Management and Protection – Customer Service organization and Labor
Relations representative, Danyelle Davis, are prepared to meet with you and/or any other local Union
representative you may wish to have present.

Renee Tomina or her representative will contact you in the near future to arrange for a meeting to
formulate a program under the above article.

If you have any questions regarding this matter, please do not hesitate to contact me.

Sincerely,

Renee Moran

Renee Moran, Director
Human Relations


CC:     C. Conrad
        R. Tomina
        T. Dungy
        D. Davis
        T. Banks
        T. Cox
        A. Dennis


7.11 Notification Letter – RM&P (Gas) 031215

# EXHIBIT D



# Utility Workers Union of America, AFL-CIO
## Local 223 - Gas Division
15160 Commerce Drive, North • Dearborn, MI 48120
Office: 313-583-0248 • Fax 313-583-0231

April 16, 2015

Renee Tomina
Director Revenue Management & Protection
DTE Energy
One Energy Plaza, 792 WCB
Detroit, MI 48226

RE: Detroit Area Business Offices
Grievance # Gas-3290 & Gas-3318

Dear Renee:

As UWUA Local 223 Gas Division Unit Chair, I am concerned about the status of the Company's apparently tentative decision to close two Detroit area customer service offices. On March 18, 2015, Renee Moran sent notice to myself and President Mike Smith that the Company would close two Detroit area business offices in the immediate future.

As you know, the Union filed the captioned grievance on March 23, 2015 challenging the Company's stated decision, citing the parties' August 8, 2006 Settlement Agreement, which provides that the Company "will maintain a minimum of three customer offices located in the Detroit Metropolitan area."

The Union is seeking to expedite processing its grievance, so as to obtain an arbitration decision before more than one of the Detroit area offices is closed. Otherwise, the arbitrator's decision could be fundamentally compromised. We would appreciate the Company's cooperation in this regard. To that end, we are willing to forego prior steps in the grievance procedure and to conduct the third step hearing on the subject grievance next week.

Of course, even these initiatives may not permit us to get an arbitration decision prior to the closure of the business offices subject to the August 8, 2006 SA. The Union therefore requests the Company to agree to give the Union 30 days written notice prior to the closure date of any of the subject offices. It seems to us that such notice is necessary to permit the parties to act if and as indicated to protect the integrity of their negotiated grievance procedure.

Thank you for your consideration, and for your prompt, affirmative response

Tom Banks
Chairman Gas Division

CC: Mike Smith
David Johnson
Danyelle Davis
Renee Moran

EXHIBIT E

INTERNET
FORM NLRB-501
(2-08)

FORM EXEMPT UNDER 44 U.S.C 3512

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case 07-CA-151511 | Date Filed 5-4-2015 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer DTE Energy | b. Tel. No. 313-235-8264 |
|---|---|
| | c. Cell No. |
| | f. Fax No. |

| d. Address (Street, city, state, and ZIP code) 2000 Second Avenue Detroit, Michigan 48226 | e. Employer Representative Diane Antishin | g. e-Mail |
|---|---|---|
| | | h. Number of workers employed 4000 |

| i. Type of Establishment (factory, mine, wholesaler, etc.) Gas/electricity distributor | j. Identify principal product or service Energy |
|---|---|

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* 8(a)(5) _____ of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

1. Utility Workers Union of America Local 223 is the certified agent for collective bargaining of over 4,000 DTE Energy employees, including many technical employees. Local 223's Gas Division comprises one unit among the several Local 223 bargaining units; it represents employees employed at DTE's Customer Service offices in DTE's Credit and Collection Department, including Collection Representative 2's (CR2s).

[see attached]

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
Utility Workers Union of America (UWUA) Local 223, AFL-CIO Gas Division

| 4a. Address (Street and number, city, state, and ZIP code) 15160 N. Commerce Drive Dearborn, MI 48120 | 4b. Tel. No. 313-965-0235 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization) UWUA, AFL-CIO

## 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By _(signature of representative or person making charge)_    L. Rodger Webb, Union Counsel
_(Print/type name and title or office, if any)_

Address _17700 W. Ten Mile Road_
_Goodwin Acker Building_
_Southfield, MI 48075_          05-01-15
                                 _(date)_

| Tel. No. 248-395-9750 |
|---|
| Office, if any, Cell No. |
| Fax No. 248-395-9760 |
| e-Mail rodger@weflaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

UWUA 223 UNFAIR LABOR PRACTICE CHARGE
PAGE 2

2.     In the week preceding November 10-14, 2014 DTE notified the Local 223 Gas Division by phone that, effective November 10 through 21, it was going to move all represented CR2s from its W Seven Mile customer service office in Detroit to other locations on an "experimental" basis.

On November 20 DTE, without prior notice to Local 223 Gas Division representatives, called a meeting among CR2s to advise them that the experiment would be continued to January 1, 2015.

In the course of these precipitous, unilateral determinations, DTE refused to permit local 223 CR2s to move over to the W Seven Mile Payment Center, on grounds their job description did not include handling teller duties.  That refusal violates the CR2s' job description, their training, and their previous work assignments as tellers in the W Seven Mile payment center.

In NLRB Case No. 07-CA-142356, Local 223 asserted that the above unilateral changes in extant terms and conditions of employment, including the fait accompli transfer of unit work from the W seven Mile business office, and the effective revision of CR2s' job description, violated §8(a)(5) of the Act.

The Regional Director deferred these allegations to the parties' grievance/arbitration process, in a decision issued February 27, 2015.

3.     On March 18, 2015, DTE sent notice to Local 223 President Mike Smith and Gas Unit chair Tom Banks that the Company would close two Detroit area business offices in the immediate future.

4.     The Union asserts that such action would violate the parties' Settlement Agreement (SA) entered into on August 6, 2006.  That agreement (attached as Exh A) provides that "the Company will maintain a minimum of three customer offices located in the Detroit Metropolitan area."  There are four DTE business offices in the described area.  Thus, were the Company to close two of them, as it has determined to do, it would patently violate the parties' SA, which requires maintenance of not less than three.

5.     On March 23, 2015 the Union filed its Grievance Nos. GAS-3290 and GAS-3318 challenging DTE's declared prospective closure of two business offices (thereby leaving two, not the minimum of the three required by the parties' SA).

6.     On April 16, 2015 unit chair Banks sent the Company a letter (attached as Exh B) proposing to expedite processing of the indicated grievances and requesting a 30-day notice prior to closure of any business office, to permit the Union to take action to protect the integrity of the parties' contractual grievance procedure. The Company has not responded to this letter.

UWUA 223 UNFAIR LABOR PRACTICE CHARGE
PAGE 3

7.     The Union submits that DTE's announced determination in this regard constitutes repudiation of the parties' negotiated SA, the right premises of the parties' contractual grievance procedure, and the Board's jurisdiction to resolve the Union's recourse to its rights under the Act.

8.     In the premises, the Union's capability to enforce the cited provision of the parties' SA is in jeopardy of irreparable prejudice, because it is presumptively impossible for the arbitration of its grievances to be timely convened, and for the arbitrator to order the equitable relief of restitution of a closed business office.

WHEREFORE, UWUA Local 223 requests the Board to find that DTE Energy has violated the Act as cited, to issue a cease and desist order respecting closure of two Detroit area business offices, to seek §10(j) injunctive relief to enjoin closure of more than one such office pending disposition of the instant unfair labor practice charge and the arbitration of the Union's associated grievances, and to afford Local 223 such other and further relief as is deemed meet in the premises.

Respectfully Submitted,

L. Rodger Webb (P33356)
Counsel for Local 223
17000 West Ten Mile Road
Goodman Acker Bldg., Ste. 150
Southfield, MI 48075
Tel: (248) 395-9750


Dated: May 1, 2015

## Settlement Agreement August 8, 2006

1. **Division/ Business Unit Discussions** (Fossil Generation, Distribution Operation, Corporate Services/Support, Gas and Customer Service): The Parties agree that the Company and each affected Division will begin discussions by August 14, 2006 to finalize MOU discussions by September 13, 2006. This will satisfy the 30 day requirement under section 7.11a of the CBA. If no agreement is reached the parties reserve all other rights under Section 7.11. Any such agreement regarding any matter addressed in the above mentioned MOU(s) will not result in the contracting or outsourcing of jobs or work. If the Company finds it necessary to reduce in classification as a result of the above mentioned MOU(s), the Company will not backfill or replace those vacated positions by outsourcing or contracting. It is the intent of the parties that neither the purpose nor the effects of this agreement will modify, diminish, supplement or in any way change the rights of either party provided by the Collective Bargaining Agreement which is in effect until June 2007, which the parties expressly reserve, except as modified herein.

   If a VSIP program is agreed to and implemented for any classification, the Company will not backfill or replace the positions vacated by this VSIP program via contracting or outsourcing (intentionally or unintentionally) and if it is determined by management that the VSIP created vacancies must be backfilled, the Company will hire Local 223 Bargaining Unit employees.

2. **Credit & Collection Offices:** The Company will maintain a minimum of three customer offices located in the Detroit Metropolitan area.

3. **Grand Rapids:** If the Company closes the Grand Rapids (GR) Credit Center, the work and jobs will be transferred to the GR Call Center. The GR Call Center will not be closed.

4. **Customer Service:** The Company withdraws its request to offer VSIP's or to require involuntary PEP layoffs within the Customer Care and Phone Collections Organizations, including Grand Rapids. The Company also agrees to pursue process, productivity and absence improvement initiatives with Local 223 as previously discussed.

5. This agreement resolves and settles LU Grievances 84, 86, 87, 88, GD2527, GD2530, GD2531 and NLRB Case No. 7-CA-49422. The Union withdraws the ULP charge regarding the PEP information request which is the subject of the Amended/Consolidated complaint in NLRB case 7-CA-49422 and all PEP information requests.

6. It is understood that the Company will honor its commitments outlined in the June 10, 2004 MOU no later than June 4, 2007. The remaining 2004 negotiated hiring-commitments will also be completed by June 4, 2007 with a specific hiring plan presented no later than September 30, 2006.

7. The Union agrees not to take any position adverse to the Company in currently pending DTE Energy related MPSC proceedings.

8. This settlement agreement is part of the current collective bargaining agreement.

9. The parties will work out and agreement regarding the information the Union / reasonably needs to monitor compliance with this Settlement Agreement.

For the Union:

_____

James Harrison

President, Local 223, UWUA, AFLCIO

Dated: _____

For the Company:

_____

Larry E. Steward

Vice President, Human Relations

Dated: _____

Exh A



# Utility Workers Union of America, AFL-CIO
## Local 223 - Gas Division

15160 Commerce Drive, North • Dearborn, MI 48120
Office: 313-583-0248 • Fax 313-583-0231

April 16, 2015

Renee Tomina
Director Revenue Management & Protection
DTE Energy
One Energy Plaza, 792 WCB
Detroit, MI 48226

RE: Detroit Area Business Offices
Grievance # Gas-3290 & Gas-3318

Dear Renee:

As UWUA Local 223 Gas Division Unit Chair, I am concerned about the status of the Company's apparently tentative decision to close two Detroit area customer service offices. On March 18, 2015, Renee Moran sent notice to myself and President Mike Smith that the Company would close two Detroit area business offices in the immediate future.

As you know, the Union filed the captioned grievance on March 23, 2015 challenging the Company's stated decision, citing the parties' August 8, 2006 Settlement Agreement, which provides that the Company "will maintain a minimum of three customer offices located in the Detroit Metropolitan area."

The Union is seeking to expedite processing its grievance, so as to obtain an arbitration decision before more than one of the Detroit area offices is closed. Otherwise, the arbitrator's decision could be fundamentally compromised. We would appreciate the Company's cooperation in this regard. To that end, we are willing to forego prior steps in the grievance procedure and to conduct the third step hearing on the subject grievance next week.

Of course, even these initiatives may not permit us to get an arbitration decision prior to the closure of the business offices subject to the August 8, 2006 SA. The Union therefore requests the Company to agree to give the Union 30 days written notice prior to the closure date of any of the subject offices. It seems to us that such notice is necessary to permit the parties to act if and as indicated to protect the integrity of their negotiated grievance procedure.

Thank you for your consideration, and for your prompt, affirmative response

Tom Banks
Chairman Gas Division

CC: Mike Smith
    David Johnson
    Danyelle Davis
    Renee Moran

Exh B

EXHIBIT F

**Utility Workers Union of America, AFL-CIO**
**Local 223 - Gas Division**
15160 Commerce Drive, North • Dearborn, MI 48120

October 30, 2015

Dear Angie,

Last week on Tuesday October 20, 2015 the Union was invited to your update meeting on the business office strategy. At that meeting we were presented with information on how well everything is going with customer transition to the Kiosk machines and how accepting the customers are.

I have been to the 7 Mile Customer Office multipliable times in the last 60 days along with other Divisional Officers, we have talked to our front line employees and customers about their experience. There is quite a different story to be told, regardless of your data and graphs that were presented.

The Union has been told there are no MPSC complaints and very few customer complaints. It was brought to our attention that there is no easy way for a customer to lodge a complaint.

As reported by the company the average time for a customer at the Kiosk is 3 minutes.

Fact:  As observed, contract employees were doing 90% of all the Kiosk input for the customer to expedite the long lines.

Is this a true reflection of the customer managing the Kiosk on their own?

In the companies report the chart shows a minimum amount of customers that either walked out of the 7 Mile Business Office or were irate.   This report gives a false illusion of success.

Fact: Customers who either walked out or were irate were only counted for a short span of time throughout the course of the day. Employees were directed by supervision to discontinue logging complaints.

In the Company's report the graph for customers that leave the 7 Mile Business Office after the teller windows are closed and return the following morning shows minimal next morning returns.

Fact:  Union officers have witnessed many customers leaving the office only to return a few minutes later with a money order to pay at the teller window.

Are the customers that leave and return accounted for?

We can agree that some customers who were reluctant to use the Kiosk, but once exposed to the Kiosk felt less intimidated.

The Union believes the Kiosks have problems and limitations, and have not been addressed by the company.

- How many breakdowns have the Kiosks encountered and how many in a single day?

- How often do the Kiosks need to be reset?

- Can the Kiosk become ADA compliant?

- At times the Kiosk does not give accurate balances. This may put a customer in a shut off status.

- Can the Kiosk be programed to return change?

- Can the Kiosk be programed to do multiple transactions?

- How many languages are the Kiosks programmed for?

In the beginning we had extensive conversation on training our customers to use alternate ways to make payments without coming to a business office. This process has not taken place.

Moving forward we believe the closure of any business office would be detrimental to our customers, representatives, and to DTE Energy. Completing a comprehensive after action review on Phase 1 of Rapid Experiment needs to be done before moving forward to Phase 2.

Sadly, we believe the only focus the company has, is close our Business offices and Layoffs or Reductions of employees "7.11".

The Union has a MOU that guarantees that 3 full functioning Business Offices remain open until 2017, and with that understanding, we do not agree with the current results of the Rapid Experiment, or moving to Phase 2 of Rapid Experiment. The company has given notice of office closures to the Union, employees, and customers.

At this time we ask that management cease and desist any and all portions of the Business Office closures and to work with the Union and collectively create ways to transition all of our stakeholders cohesively.

We require a response by November 6, 2015 due to time restraints placed by Departmental Leadership. If we receive no response by the above date, the Union will invoke all contractual rights.

Sincerely,

Tom Banks
Chairman Local 223 UWUA Gas Division

EXHIBIT G

L. Rodger Webb. P.C.
17000 West Ten Mile Road
Goodman Acker Building, Second Floor
Southfield, MI 48075

Telephone (248) 395 9750
Fax (248) 395 9760

L. Rodger Webb                                        Of Counsel: Alison L. Paton
Admitted in Michigan
and the District of Columbia

November 9, 2015

Renee Moran
Director Human Relations
DTE Energy
12416 Howland Park Dr
Plymouth, MI 48170-6910

      Re:    Closure of 7 Mile Customer Office
              Gr. # GAS 3372
              Our File No. 1970-267

Dear Ms. Moran:

I write on behalf of UWUA Local 223. As you know from correspondence with Thomas Banks, Local 223 Gas Unit Chair, the Union challenges DTE's announced determination to close the 7 Mile Customer Service Office in mid-December, on grounds that same violates the parties' Settlement Agreement executed August 8, 2006, wherein the Company covenants to "maintain a minimum of three customer offices located in the Detroit Metropolitan area."

As you also know, the Union has filed a grievance respecting such a closure, pursuant to the procedure set forth in the parties' collective bargaining agreement. In the circumstances, it is plain that the Union's grievance cannot be carried through to an arbitration decision within the Company's present time frame to close the 7 Mile customer service office.

Local 223 therefore requests the Company to put over closure of the 7 Mile office until the Union's grievance under the contractual grievance procedure has been arbitrated. A fair estimate on the length of time required for that purpose is probably an additional 90 days, assuming the parties file post-hearing briefs, as is their custom. Local 223 will be happy to expedite arbitration of its grievance, as indicated.

Please let Mike Smith, Local 223 President, know, in writing, cc'd to Thomas Banks and me, whether the Company will agree to the requested extension of time. Failing such an agreement, the Union will be obliged to seek injunctive relief in federal

court to preserve its rights to prosecute its grievance under the parties' collective bargaining agreement.

Thank you in advance for your attention and cooperation in this regard –

Very Truly Yours,

L. Rodger Webb

cc:    Mike Smith
       Thomas Banks
       Ben Frimpong

2